## Stanfill v. Commonwealth.

(Decided April 24, 1925.)

### Appeal from Perry Circuit Court.

1.  Homicide—Evidence Held to Support Conviction of Voluntary Manslaughter.—Evidence held to support conviction of voluntary manslaughter.

2.  Criminal Law—Criticism of Instruction for Joining Usual Reasonable Doubt Instruction with One as to Degree of Offense for which Accused should be Convicted Held Not Well Taken.—Criticism of instruction for including both usual reasonable doubt instruction and one as to degree of offense for which accused should be con-

victed, if jury entertained a reasonable doubt in that respect jointly held not well taken.

3. Homicide—Instruction as to Right of Accused to Defend his Shop Held Not Justified by Evidence.—Requested instruction as to right of accused to defend his shop held not justified by evidence.

4. Homicide—Deceased's Advance to Accused's Shop, Without Intent to Inflict Death or Great Bodily Harm, Held Not to Add to what Right of Self-defense Afforded Him.—Deceased's advance to accused's shop, without intent to inflict death or great bodily harm, held not to add to what the right of self-defense afforded him.

5. Criminal Law—Failure to Reserve Exception to Remarks of Commonwealth's Attorney Precludes Consideration of Alleged Error in Argument.—Failure to reserve an exception to remarks of the Commonwealth's attorney precludes consideration of alleged error in argument.

6. Criminal Law—Remarks of Counsel for Commonwealth, in Argument to Jury, Held Not Reversible.—Remarks of counsel for Commonwealth that deceased's parents had come all the way from Virginia to witness the trial of the slayer of their son, and to see that justice was administered to him, and importuning jury not to disappoint the parents by verdict condoning murder by allowing perpetrator to go acquitted, held not reversible; the argument being free from any misstatement of any fact, and from testimony from lips of prosecutor.

BOLQUE & BALLOU and H. C. EVERSOLE for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On his trial under an indictment charging him with murdering Worley Furgeson, the appellant, Everett Stanfill, was convicted of voluntary manslaughter and punished by confinement in the penitentiary for twenty-one years. His motion for a new trial was overruled and from the judgment pronounced upon the verdict he prosecutes this appeal, urging as grounds for a reversal of the judgment, (1), that the verdict is contrary to the evidence, (2), error committed by the court in its instructions to the jury, and (3), improper remarks of counsel for the Commonwealth in his closing argument to the jury.

1. In disposing of ground (1) but little need be said. Every eye-witness, except defendant (and there were five or six of them), testified to a state of facts which proved the defendant to be the aggressor and the one who brought on the immediate difficulty in which

the deceased lost his life. There were other witnesses who testified to threats made by defendant against deceased a short time before the killing and in which he applied to the deceased profane and scurrilous language, which plainly portrayed both malice and anger. In substance, the facts as admitted, or abundantly established by the evidence, were: That both deceased and defendant were working for an operating coal company. The former was engaged in weighing the coal that each miner produced while the latter had charge of the blacksmith shop. On the 8th day of May, 1924, at about eight o'clock A. M. defendant was in the blacksmith shop with his elbows resting upon the sill of a window therein and within four or five feet of a door, both of which were in the side of the shop, there being doors at both ends of it. About five or six feet in front of the door deceased was leaning against a truck, which had been stopped at that place and he had a pipe in his right hand with a match in his left one and apparently contemplating the immediate striking of the match with which to light his pipe, whereupon defendant said to him: "Pinhook (a nickname), your wife is down there raising trouble with my wife" and deceased replied, "Everett, don't talk to me, I don't believe a G— damn thing you say anyway," and defendant immediately grabbed his pistol that he had brought to the shop that morning, and which was lying on the bench within one or two feet of him and pointed it at deceased through the window, but from some cause he did not then shoot, but at once moved to the door and fired into the body of deceased six bullets from the effects of which he died within a few minutes, one or two of them being fatal. After the clearing away of the smoke parties went to the deceased and found in his partially open had, a pistol, which was loaded but from which no shots had been fired. However, the witnesses for the prosecution state that they saw nothing in the hands of the deceased immediately before and during the shooting and some of them state that he threw up both of his hands when defendant commenced shooting. It is in proof that defendant remarked just after the shooting, in substance, that he would have done that before had it not been for his wife and children, and in the proven threats by him he stated, in substance, that if he ever got a good opportunity he would shoot the one who had shot his dog in the same manner that the dog was shot. It was also

in proof and admitted by defendant, that a dog that was at his home and which he either then owned or had owned had recently been shot by someone and that it was generally known and by most people believed, that deceased shot the dog. The two lived on adjoining lots and it seems that for sometime prior to the killing a feud had arisen between their wives and quarrels, and, perhaps, fights were almost daily engaged in between the women. From this brief statement of the evidence it will at once appear that ground (1) is absolutely without merit, for if the killing occurred in the manner described by the eye-witnesses, viewed in the light of prior threats and ill-feeling, the defendant is to be congratulated for receiving a manslaughter instead of a murder conviction.

2. The only complaint under ground (2) is of instruction number V which as given to the jury reads: "If the jury have a reasonable doubt of the defendant having been proven guilty, they ought to find him not guilty; or if the jury shall believe from all the evidence beyond a reasonable doubt that the defendant has been proven guilty either of wilful murder as defined in instruction No. 1 above, or voluntary manslaughter as defined in instruction No. 2 above, but shall have a reasonable doubt from all the evidence as to whether the defendant be guilty of voluntary manslaughter, or wilful murder, then you ought to find him guilty of the lower offense, voluntary manslaughter." The only complaint of that instruction is that it joins the usual reasonable doubt instruction with the one as to the degree of the offense for which the defendant should be convicted, if the jury entertained a reasonable doubt in that respect. No authority is cited for that criticism and it is impossible for us to see wherein the substantial rights of the defendant was prejudiced by including the two instructions in one. It has been our observation that many circuit courts indulge in that practice and this is the first time that objection to it has been urged in this court. It might be that the more technically formal way would be to separate the instructions but only for the purpose, as we conceive it, to conform to the more general practice and not to more circumspectively guard or protect the rights of the defendant. We, therefore, conclude that this criticism of the instruction is not well taken.

Under this ground it is also urged that the court should have instructed the jury upon the right of defendant to defend *his* shop. At least two answers to that con-

tention may be made, (a), that there is no proof in the
case that the shop belonged to defendant, but on the con-
trary, it is reasonably inferable from the proof that it
was the property of the coal company for whom defend-
ant was working and (b), even if it had been the prop-
erty of defendant the instruction would have been im-
proper because there is no pretense by him or any other
witness that the deceased was making any effort to
wrongfully invade the property rights of any one in and
to the shop. There was no proof that he was about to or
was threatening to *unlawfully* enter it, or that he was
attempting to even commit a trespass by so doing and it
is, therefore, not a case presenting the rights of the
owner to the protection of his property against the un-
lawful acts of a wrongdoer. Almost the exact question
was presented in the case of Thomas v. Commonwealth,
195 Ky. 623, and in denying the same contention that is
here made we said: ''The appellant's further contention
that the trial court erred in refusing to instruct the jury
as to his right to defend his home, is also without sup-
port from the record. The instruction upon the law of
self-defense given by the court, and which correctly and
aptly defines that right, covers every ground that, upon
the facts of this case, could have justified or excused the
killing of McCoy or the killing of Bill Thomas by the ap-
pellant. Instructions must be predicated upon the facts
of the case; so before a court is required or justified in
giving an instruction to the jury which submits a defense
for its consideration there must be evidence upon which
to base such an instruction. Brennon v. Commonwealth,
169 Ky. 815; Smith v. Commonwealth, 122 Ky. 444. It is
apparent from the evidence in this case that at the time
of the shooting of McCoy by the appellant, neither the
home of the latter nor any inmate thereof was in any
danger at the hands of McCoy or Bill Thomas. Both left
the house and started home several minutes before the
shooting, and were across the road and the appellant in
front of the house when the shooting occurred; and ac-
cording to the latter's own testimony and that of his wit-
nesses, it was injury to his person and not his home or
family that he feared when he shot and killed McCoy. It
is our conclusion, therefore, that no necessity was ap-
parent for the giving of the instruction in question, hence
the failure or refusal of the court to give it was not preju-
dicial error.'' If deceased was advancing towards the
door of the shop, at the time he was shot by defendant

and if he owned the shop the latter fact would not add to his right to take the life of the deceased, unless the latter was about to inflict death or great bodily harm upon him; so that, his rights under such circumstances would not be any greater than what the right of self-defense affords him. It is, therefore, apparent that this contention is likewise without merit.

3. In disposing of ground (3), it should first be said that no exception was taken to the remarks of Commonwealth's attorney, which itself is sufficient without further comment to dismiss the complaint; but we have examined the remarks of counsel and find nothing therein upon which to base the criticism made by counsel. In substance, they were, that the parents of deceased had come all the way from Virginia to witness the trial of the slayer of their son, and to see that justice was administered to him, and the attorney importuned the jury not to disappoint those two old people by announcing to them, through their verdict, that the Commonwealth of Kentucky condoned murder by allowing the perpetrator to go acquitted. We discover nothing objectionable in such appeal after counsel has analyzed the evidence and demonstrated, according to his conclusion, the defendant's guilt. There was no misstatement of any fact in the argument objected to, nor was there anything which smacked of testimony from the lips of the Commonwealth's attorney and, therefore, we find no transgression of the latitude allowed by the practice in such cases as heretofore prescribed by us in prior opinions. We must, therefore, deny this ground.

After a careful review of the entire record, it is our opinion that defendant had a fair and impartial trial and he presents no ground authorizing our interference with the verdict, and the judgment pronounced thereon is affirmed.